GEORGE F. CARY, Ex'r and Trustee, In Equity

*vs.*

FRANCIS L. TALBOT et als.

Washington.     Opinion November 5, 1921.

*Bill in equity seeking the construction of a will, and for instructions to the executor and trustee. Under clause two, legal title vested in the trustee, and equitable title in the beneficiaries named, as all were living at death of testator, and their interest was not in common but joint, hence upon death of any one of them, the interest of deceased would pass to survivors, not to heirs, executors, administrators or assigns. All interests under the will vest within the prescribed time, hence rule against perpetuities not offended, and trust is valid. Beneficiaries have an assignable interest in income accruing and distributed in their lifetime only. Trust may be terminated by the sale of all the property during the lifetime of one or more of the beneficiaries, otherwise to continue until death of the last survivor. Residuary interests vested at death of testator, and in case of death pass to devisees, legal representatives or assigns. All persons now entitled to participate as representing a deceased beneficiary have a present assignable interest in the residuum.*

Bill in equity asking for the construction of the will of Peter S. J. Talbot, and for instructions to the executor and trustee.

*Held:*

1. That under clause two, the legal title vested in the trustee, and the equitable title in the twelve beneficiaries named, as they were all living at the death of the testator.

2. Their interest was not in common but joint, and upon the death of one or more his or their interest would pass not to his or their heirs, executors, administrators or assigns, but to the survivors.

3. The trust created is valid. Its provisions do not offend the rule against perpetuities, because all interests under the will vest within the prescribed time.

4. In case of serious disagreement between the trustee and his cotenants who own an undivided half of the wild land, the remedy of the trustee would be to apply to the court in equity, setting forth all necessary facts and bringing in all necessary parties.

5. Proceeds from the sale of the real estate and income from the sale of stumpage should be distributed annually among those entitled thereto. If a beneficiary is not living at the time of annual distribution his or her share passes to the then survivors.

6. The beneficiaries have an assignable interest in income accruing and distributed in their lifetime, but not in income accruing and distributed after their decease.

7. The trust may be terminated by the sale of all the property during the lifetime of one or more of the beneficiaries. If no sale is effected during that time the trust will continue until the death of the last survivor.

8. The death of the testator fixed the time of vesting of the residuary interests, and as all the devisees and legatees were living at that time, if any have since died their interest passed to their devisees, legal representatives or assigns.

9. The surviving residuary beneficiaries or other persons now entitled to participate as representing a deceased beneficiary have a present assignable interest in the residuum.

10. Reasonable counsel fees may be fixed by the sitting Justice and may be allowed in the executor's account.

On report. A bill in equity praying for the construction of the will of Peter S. J. Talbot, who died January 5, 1908, leaving neither widow nor children, but twenty-eight relatives. A hearing was had upon the bill and answers, and by agreement of the parties, the Justice sitting ordered the cause reported to the Law Court, upon bill and answers, for final determination. Bill sustained with costs. Decree in accordance with the opinion.

The case is fully stated in the opinion.

*C. B. and E. C. Donworth,* for plaintiffs.

*Ryder & Simpson,* for certain defendants.

*George C. Wheeler,* for other defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

CORNISH, C. J.   Peter S. J. Talbot executed the will before us for construction on July 3, 1907.   He died six months later, on January 5, 1908, leaving neither widow nor children, but twenty-eight relatives, including a brother, nephews and nieces, grandnephews and grand-nieces.   Of all these he selected eight to be recipients of his bounty, to whom he joined four others, two sisters-in-law and two whose relationship is not disclosed.   He further named alternates in place of two, but the remaining twenty of his relatives were not to share in his estate.   Among the twelve thus selected he distributed his property through two distinct channels, a part through trusteeship and a part directly under the residuary clause.   The reason for the separation is apparent.   The testator had owned in common with his brother, James R. Talbot deceased, two tracts of wild land.   It was for the best interest of all concerned that these lands should continue to be operated as an entirety, and he therefore placed them in trust under the second clause of his will, which is as follows, omitting the description:

"To have and to hold said real estate by said George F. Cary in trust for the following named purposes, to wit:  Said trustee is to employ my nephew James R. Talbot of said East Machias as agent to have charge of said real estate, grant permits for cutting the growth thereon, collect the stumpage, and after deducting the state and county taxes, and such other expenses as may accrue thereon, to pay over annually the net income to said trustee.

Said trustee is to annually distribute said net income, less the expenses of administration of his said trust, among such of the following named persons, in equal shares, as may be living at the time of said distribution, and not to their heirs, executors, administrators, or assigns, to wit:   (1)   Rev. M. Jones Talbot, D. D. if living, but if not living at time of the distribution, then the share he would have taken if living is to be paid to Emery H. Talbot of Dorchester, Mass. (2)   Mrs. Mary C. Talbot, for the personal use of herself and her son, Henry L. Talbot, if she be living at the time of the distribution, otherwise said share is to be paid to said Henry L. Talbot.   (3) Emily P. Talbot of said East Machias.   (4)   Mrs. Elizabeth B. Talbot of said East Machias.   (5)   Mrs. Emily P. Harris of said

East Machias. (6) Mrs. Betsey T. Hawley of Malden, Mass. (7) Francis Loring Talbot of said East Machias. (8) Mrs. Mary P. Salmon of Newton Highlands, Mass. (9) Miss Alice W. Pope of Boston, Mass. (10) Mrs. Anna Spaulding of Seattle, Wash. (11) Mrs. Clara F. Hooper of said East Machias. (12) Frank E. Talbot of Chicago, Ill. Said trustee is to hold each of said undivided halfs as long as the other undivided half is wholly owned by the devisees of said James R. Talbot, or their heirs or devisees, but he is hereby authorized and empowered to sell and convey the same, or any part thereof, wholly discharged of said trust, concurrently with a conveyance made by such other owners, whenever all the owners, himself included, decide that it is for the best interests of all to so sell and convey. Should the other undivided half of either of said tracts cease to be owned by the devisees of said James R. Talbot, or by their heirs or devisees, then said trustee is to have the power and authority to sell and convey the undivided half held by him, or any part thereof, wholly discharged of said trust whenever he may deem it advantageous so to do. Whenever sale and conveyance is made of the trust estate, or any part thereof, the net proceeds of such sale shall be distributed in the manner hereinbefore provided for distribution of funds received from stumpage."

What is the true legal interpretation of this clause? We deem it to be this. The legal title vested in George F. Cary, the trustee, the equitable title in the twelve beneficiaries named, as they were all living at the death of the testator. Their interest was not in common but joint, and upon the death of one or more his or their interest would pass, not to his or their heirs, executors, administrators or assigns, but to the survivors. We are aware of the statute providing that "devises of land to two or more persons create interests in common unless otherwise expressed." R. S., Chap. 78, Sec. 13. But in this will it is otherwise expressed and in distinct terms. This section also contemplates the employment of an agent by the trustee who shall have charge of the lumber operations and shall pay over annually the net income to the trustee. At each annual period of distribution only such of the beneficiaries named can take as may then be living. The original fractional interest was twelfths, but the shares at subsequent divisions will grow larger as the number of distributees grows smaller. The principal or any portion thereof in case of sale of the whole or a part of the corpus is to be distributed

in the same manner and in the same proportions as the net income.

Let us now answer such of the propounded questions as need be answered at the present time.

A. "Whether the testator created a valid trust by the second item of this will or whether the provisions thereof are nugatory as violating the rule against perpetuities; and if null what disposition is to be made of the property which is the subject of said second item."

We answer that the trust is valid. Its provisions do not offend the rule against perpetuities. All interests under the will, both legal and equitable, vest within the prescribed time and it is with the vesting rather than the termination, the Alpha rather than the Omega, that the rule concerns itself. *Pulitzer* v. *Livingston*, 89 Maine, 359; *Andrews* v. *Lincoln*, 95 Maine, 541; *Strout* v. *Strout*, 117 Maine, 357.

B. "If a valid trust exists, what the trustee's remedy is in case of serious disagreement between him and his cotenants regarding the expediency or necessity of operating on said tracts, or concerning the quantity or character of the growth to be cut thereon, in any particular year."

The remedy of the trustee would be to apply to this court in equity which has plenary powers in the execution of trusts under R. S., Chap. 82, Sec. 6, Par. X, and Chap. 73, Secs. 10 and 11, setting forth all necessary facts and bringing in all necessary parties.

C. "Whether the trustee would be justified, in case of such disagreement, in applying for partition of the real estate with the view of causing his one-half part thereof to be set out to be held by him in severalty, the part assigned as his share to be managed independently of the remainder of said tracts."

D. "Should said lands promise to be unproductive of substantial income for a series of years because of paucity of growth thereon, whether the trustee would be justified in selling and conveying his part thereof; and whether, if so justified, a license of probate court or a decree of this court would be a preliminary requirement."

These interrogatories are based upon a possible disagreement in the future between the manager of the half interest owned by the devisees of James R. Talbot and the manager or trustee of the half interest owned by the devisees of Peter S. J. Talbot. They should not be answered at the present time. It is unwise to anticipate trouble and the court must confine itself to the solution of problems

that have already arisen or must necessarily arise, and not attempt to solve those that by the exercise of patience and tactful wisdom on the part of the interested parties may never exist.

E. "Several of the persons named as cestuis que trust having died subsequently to the death of said Peter S. J. Talbot as set out in the seventh paragraph of this bill, what disposition is to be made of the shares of income of the proceeds of sale of said real estate, that the deceased cestui would have taken had he or she been living at the time of distribution."

We are somewhat in doubt as to the meaning of this question, because it speaks of "the income of the proceeds of the sale of real estate." There should be no income as such from the proceeds of sale of the real estate. Such sales would be of the corpus itself and when made the proceeds should be distributed among those entitled thereto. The income from the sale of stumpage should be divided in the same manner. In both cases if a beneficiary is not living at the time of annual distribution his or her share passes to the then surviving beneficiaries as already stated.

F. "Whether the surviving cestuis, or other persons now entitled to participate in the distribution as representing a deceased cestui, have an assignable interest in the prospective income, whether accruing during their lifetime or after their decease."

The beneficiaries have no assignable interest in income accruing and distributed after their decease. They have an assignable interest in income accruing and distributed during their lifetime.

G. "How long the trust is to continue."

By its terms it may be terminated by the sale of the property during the lifetime of some of the beneficiaries. If no sale is effected during that time, the trust will continue until the death of the last survivor. The trust would then terminate for want of a cestui que trust. *Stone* v. *McLain,* 102 Maine, 168; *Laughlin* v. *Page,* 108 Maine, 307, 318.

H. "Who is to succeed to the title of the trust real estate at the termination of the trust."

This question should not be answered at the present time. If the trust be terminated by the sale of the entire property during the lifetime of one or more of the beneficiaries, there will be no occasion to answer it. If it be terminated by the death of the last survivor, that will doubtless be far in the future and if necessary it can then be answered when all the parties then claiming an interest may be

brought before the court and their rights determined. It is likely, however, that such a controversy will never arise.

I.   "Several of the persons named as residuary beneficiaries under the will having died since the testator, as set out in the seventh paragraph of this bill, and there being funds in the hands of the executor that do not belong to the trust estate, but which are distributable as residuum of the principal estate, what persons are to receive said funds as distributees."

This involves the construction of the residuary clause, which is as follows:

"Third.   All the rest, residue and remainder of my estate, whether real, personal or mixed, and wherever and however situated, I give, bequeath and devise in equal shares, unto such of the following named persons as may be living at the time of my decease, but not to their heirs, executors, administrators, or assigns, to wit:   The aforesaid M. Jones Talbot, Mary C. Talbot, Emily P. Talbot, Elizabeth B. Talbot, Emily P. Harris, Betsey T. Hawley, Francis Loring Talbot, Mary P. Salmon, Alice W. Pope, Anna Spaulding, Clara F. Hooper, and Frank E. Talbot.   Should said M. Jones Talbot not survive me, then the share which he would have taken if living, is to go to the aforesaid Emery H. Talbot should he be living at the time of my decease; and should the said Mary C. Talbot not survive me, then the share which she would have taken if living is to go to said Henry L. Talbot provided he be living at the time of my decease."

The death of the testator fixed the time of the vesting of these residuary interests.   It appears from the record that all these devisees and legatees were living at that time.   Therefore all the interests then vested in the persons named.   The devisees or legal representatives or assignees of any who have died since the testator's decease would succeed to such beneficiary's share.   They take not from the testator but from the devisee.   There is a clear distinction in this respect between clause two and clause three, the trust estate and the residuary estate.   In the former, the interest is joint and survival at time of distribution is the crucial test; in the latter, the interest is in common and the vested share of a devisee passes to his or her representative.

J.   "Whether the surviving residuary beneficiaries, or other persons now entitled to participate as representing a deceased beneficiary, have a present assignable interest in the residuum."

We answer in the affirmative. The interests held by these parties are vested and as such are assignable.

It is proper under the circumstances of this case that the estate of Peter S. J. Talbot should bear the reasonable costs and expenses of this litigation. Reasonable counsel fees may be fixed by the sitting Justice who signs the final decree and may be allowed in the executor's account.

*Bill sustained with costs.*
*Decree in accordance with*
*the opinion.*